UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE NO.:


OLVIN ARAUJO ROJAS,

     Plaintiff,


v.


FROST-ARNETT COMPANY, AND
SACRED HEART HEALTH SYSTEM,
INC., d/b/a ASCENSION SACRED
HEART PENSACOLA, d/b/a
ASCENSION MEDICAL GROUP
SACRED HEART,
.

     Defendants.

_____/


## COMPLAINT


1.    Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 et seq. ("FCCPA"). Plaintiff OLVIN ARAUJO ROJAS (hereinafter "Plaintiff") sues Defendant FROST-ARNETT COMPANY and Defendant SACRED HEART HEALTH SYSTEM, INC., d/b/a ASCENSION SACRED HEART PENSACOLA, and d/b/a ASCENSION MEDICAL GROUP SACRED HEART (collectively, the "Defendants") for violations of Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*., and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §559.55 *et seq.*

LEGAL STANDARD

2.      The characterization of the FDCPA as a strict liability statute is generally accepted. *See, e.g., LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010)*. Pursuant to Florida Statute §559.55(2), ("FCCPA"), "nothing in this part shall be continued to limit or restrict the applicability of the Fair Debt Collection Practices Act to consumer collection practices in this state. This part is in addition to the requirements and regulations of the federal act. In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer shall prevail."

JURISDICTION

3.      Jurisdiction of this Court arises under 28 U.S.C. § 1331, §1337, and §1367, and pursuant to 15 U.S.C. § 1692 et seq. ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 et seq. ("FCCPA"). Under 28 U.S.C. 1367(a), this Court has supplemental jurisdiction over Plaintiff's stated FCCPA claims in that it is so related to the federal FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

4.      This action arises out of Defendants' violations of the FDCPA and FCCPA, in their illegal efforts to collect a consumer debt from Plaintiff.

5.      Venue is proper in this District because the acts and transactions complained of occurred here, Plaintiff resides here, the Defendants transact and/or conduct business here, and the complained conduct of the Defendants occurred here.

<u>PARTIES</u>

6.      Plaintiff, OLVIN ARAUJO ROJAS, is a natural person who resides in the City of Pensacola, County of Escambia, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

7.      Defendant FROST-ARNETT COMPANY (hereinafter "Defendant FROST-ARNETT") is a collection agency operating from an address of 480 James Robertson Parkway, Nashville, TN 37219, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and is incorporated under the laws of the State of Tennessee.

8.      Defendant FROST-ARNETT engages in interstate commerce by regularly using telephone and mail in its business, the principal purpose of which is the collection of debts. Defendant FROST-ARNETT regularly collects or attempts to collect debts for other parties in the State of Florida. In this case, Defendant FROST-ARNETT attempted to collect debt from Plaintiff in Miami-Dade County, Florida, giving rise to this legal action.

9.      Defendant FROST-ARNETT is a "debt collector" as defined in the FDCPA and FCCPA, under 15 U.S.C. §1692a(6) and Florida Statute §559.55(6).

10.      Defendant FROST-ARNETT was acting as a debt collector with respect to the collection of Plaintiff's alleged debt.

11.      At all relevant times, Defendant FROST-ARNETT acted through its respective duly authorized agents, employees, officers, directors, members, heirs, assigns, successors, principals, trustees, sureties, subrogees, representatives, and insurers.

12.      Defendant Sacred Heart Health System, Inc., d/b/a Ascension Sacred Heart Pensacola, and d/b/a Ascension Medical Group Sacred Heart ("Defendant SACRED HEART") is a Florida not for profit corporation, with its principal place of business located in Pensacola, Florida.

13.     At all times material, Defendant SACRED HEART was the creditor of the debt Defendant FROST-ARNETT sought to collect from Plaintiff.

## FACTUAL ALLEGATIONS

14.     On or about July 18, 2022, Plaintiff suffered an accident and related injuries during the course of scope of his employment ("work injury" or "work injuries") that required medical treatment and services (hereinafter "medical services").

15.     Defendant SACRED HEART conducts business under its d/b/a of Ascension Sacred Heart Pensacola and d/b/a physician group, Ascension Medical Group Sacred Heart.

16.     Subsequent to the work injury, on a date better known by Defendant SACRED HEART, Defendant SACRED HEART provided Plaintiff with required medical services needed to treat his work injuries. The only medical services provided to Plaintiff by Defendant SACRED HEART were for the treatment of the work injuries. Defendant SACRED HEART provided medical services to the Plaintiff through its facility at Ascension Sacred Heart Pensacola and through its physician group, Ascension Medical Group Sacred Heart.

17.     During the time Defendant SACRED HEART provided medical services to the Plaintiff at its facility, Ascension Sacred Heart Pensacola, Plaintiff informed same that the injuries for which he required medical attention, treatment, and/or medical services stemmed from a work accident and injuries stemming from same.

18.     On or about July 25, 2022, Defendant SACRED HEART, at its facility, Ascension Sacred Heart Pensacola, provided emergency medical services, including hospital admission for the work injuries. Subsequently, on or about August 12, 2022, Plaintiff underwent surgery at Defendant SACRED HEART at its facility, Ascension Sacred Heart Pensacola. As such,

Defendant SACRED HEART provided medical services to the Plaintiff, including but not limited to, administration of anesthesia and physician services.

19.     Defendant SACRED HEART, through its physician group, Ascension Medical Group Sacred Heart, began providing medical services specifically related to the work injuries on July 25, 2022. All medical services provided by Defendant SACRED HEART, through its physician group, Ascension Medical Group Sacred Heart, were solely for medical treatment related to Plaintiff's work injuries stemming from his work accident of July 18, 2022.

20.     On or about August 4, 2022, Defendant SACRED HEART (through medical services provided at Ascension Sacred Heart Pensacola) sent the Plaintiff a letter billing him $18,487.45 for hospitalization with admission date of July 25, 2022.

21.     On or about August 20, 2022, Defendant SACRED HEART sent another letter to the Plaintiff for date of service of August 10, 2022 for laboratory services for $278.51.

22.     On or about August 23, 2022, Defendant SACRED HEART sent another letter to Plaintiff for anesthesia services for date of service of August 12, 2022, charging $62,438.60. The itemized bill noted insurance coverage through workers compensation.

23.     On October 21, 2022, Defendant SACRED HEART billed Plaintiff again for laboratory services for date of service of August 10, 2022 for same amount of $278.51. Defendant SACRED HEART continued billing said laboratory services via letters prepared on or about November 20, 2022 and December 20, 2022.

24.     Lastly, Defendant SACRED HEART sent Plaintiff another bill on or about December 27, 2022 in the amount of $2,283.40 for hospitalization on July 25, 2022. The itemized bill noted Amerisys as workers compensation insurer. See letters attached hereto as Exhibit "A."

25.     On or about July 25, 2022, Defendant SACRED HEART, through its physician group Ascension Medical Group Sacred Heart, began providing medical services to the Plaintiff

related to his work injuries. Medical services continued to be provided by said physician group for over a year. All medical services provided by Ascension Medical Group Sacred Heart were solely for treatment related to Plaintiff's work injuries.

26.     On or about August 3, 2022, Defendant SACRED HEART (through its physician group Ascension Medical Group Sacred Heart) sent the Plaintiff a letter with statement billing him $475.72 for physician services provided for date of service of July 25, 2022.

27.     On or about September 1, 2022, same facility as d/b/a of Defendant SACRED HEART sent Plaintiff another bill for $304.36 for physician services provided on July 25, 2022 and July 26, 2022.

28.     On or about September 7, 2022, Defendant SACRED HEART sent Plaintiff a bill for $3,444.54 for physician services provided from July 25, 2022 through August 3, 2022.

29.     On or about October 6, 2022, Defendant SACRED HEART sent another bill to Plaintiff in the amount of $304.36 for physician services provided on July 25, 2022 and July 26, 2022.

30.     Further, on or about October 12, 2022, Defendant SACRED HEART sent Plaintiff another bill for $3,614.46 for physician services provided from July 25, 2022 through September 7, 2022. Defendant SACRED HEART sent Plaintiff another bill for $3,614.46 on or about November 16, 2022. See letters attached hereto as Exhibit "B." All letters from Defendant SACRED HEART will be referred to as "CREDITOR LETTERS." All CREDITOR LETTERS FROM Defendant SACRED HEART requested payment of the bills by a certain due date.

31.     At the time Defendant SACRED HEART provided its respective medical services to the Plaintiff, Plaintiff informed same that the treatment sought was for the work injuries.

32.     Defendant SACRED HEART charged a fee for providing is respective medical services for treatment of the work injuries.

33.    The workers' compensation insurance carrier, USIS authorized Defendant SACRED HEART to provide medical services, including but not limited to, initial admission of July 25, 2022 and related medical services, as well as all subsequent medical treatment. In fact, USIS accepted compensability for medical services provided by Defendant SACRED HEART through its facilities Ascension Sacred Heart Pensacola and Ascension Medical Group Sacred Heart.

34.    Plaintiff's work accident and resulting injuries gave rise to said Consumer Debt.

35.    Defendant SACRED HEART knew that payment of the Consumer Debt was the responsibility of Plaintiff's employer and/or the worker's compensation carrier, and not the responsibility of the Plaintiff.

36.    Defendant SACRED HEART knew that it did not have any statutory or contractual right to attempt to collect the Consumer Debt from Plaintiff. Despite knowing this, however, Defendant SACRED HEART communicated with Defendant FROST-ARNETT to collect, or attempt to collect, the Consumer Debt from Plaintiff. In so doing, Defendant SACRED HEART disclosed to Defendant FROST-ARNETT false information about Plaintiff and/or information that Defendant SACRED HEART had no legitimate business need for, the likes of which affected the reputation of Plaintiff.

37.    For example, Defendant SACRED HEART disclosed to Defendant FROST-ARNETT (the "Disclosure"), among other things: the existence of the Consumer Debt; that the Plaintiff owed the Consumer Debt was owed to Defendant SACRED HEART; and that Plaintiff did not pay the Consumer Debt and /or that the Plaintiff defaulted on said Consumer Debt.

38.    This Disclosure affected Plaintiff's reputation regarding the repayment of debts, his reputation of truthfulness, of solvency, and trustworthiness.

39.     On a date better known by Defendant FROST-ARNETT, Defendant FROST-ARNETT began attempting to collect the Consumer Debt from the Plaintiff.

40.     Defendant FROST-ARNETT is a business entity engaged in the business of soliciting consumer debt for collection, and in the business of collecting consumer debts.

41.     Defendant FROST-ARNETT regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed to another.

42.     On or about December 6, 2022, Defendant FROST-ARNETT sent a collection letter ("FROST-ARNETT Letter 1") in an attempt to collect a Consumer Debt. The letter indicated that Defendant FROST-ARNETT was attempting to collect a debt owed to Sacred Heart Medical Group in the amount of $304.36. A copy of the FROST-ARNETT Letter 1 is attached hereto as Exhibit "C."

43.     The Collection Letter sought to collect $304.36, with an original amount owed of $441.93, and a credit of $137.57. The credit of $137.57 signifies payment made by USIS at Florida fee schedule thereby showing that Defendant FROST-ARNETT and/or Defendant SACRED HEART had been put on further notice that said bill resulted from work injuries. DEFENDANT FROST-ARNETT falsely represented the amount of the consumer debt as $304.36 in said FROST-ARNETT Letter 1.

44.     On December 13, 2022, Defendant FROST-ARNETT sent Plaintiff another collection letter in an attempt to collect a Consumer Debt. The letter indicated that Defendant FROST-ARNETT was attempting to collect a debt owed to Sacred Heart Medical Group in the amount of $475.72. A copy of the FROST-ARNETT Letter 2 is attached hereto as Exhibit "D."

45.     The December 13, 2022 collection letter sought to collect $475.72, with an original amount owed of $526.48, and a credit of $50.76. The credit of $50.76 signifies payment made by USIS at Florida fee schedule thereby showing that Defendant FROST-ARNETT and/or Defendant

SACRED HEART had been put on further notice that said bill resulted from work injuries. DEFENDANT FROST-ARNETT falsely represented the amount of the consumer debt as $475.72 in said FROST-ARNETT Letter 2.

46.     FROST-ARNETT Letter 1 and FROST-ARNETT Letter 2 will be collectively referred to as "COLLECTION LETTERS."

47.     The COLLECTION LETTERS of December 6, 2022 and December 13, 2022 represent actions to collect a debt by Defendant FROST-ARNETT.

48.     The COLLECTION LETTERS were communications from Defendant FROST-ARNETT to Plaintiff in connection with the collection of a debt.

49.     On a date known by the Defendant FROST-ARNETT, Defendant FROST-ARNETT transmitted Plaintiff's personal information to a third-party (referred hereinafter as "Third-Party"). Defendant FROST-ARNETT transmitted personal information to the Third-Party including but not limited to the following: Plaintiff's name; Plaintiff's address; the creditor of the consumer debt; the existence of the consumer debt; the amount of the consumer debt; information regarding the service; and information that the Plaintiff did not pay the consumer debt.

50.     The Defendant FROST-ARNETT transmitted Plaintiff's personal information to a Third-Party. In turn, the Third-Party prepared letters that were sent to Plaintiff in attempts to collect consumer debt.

51.     The transmitted personal information affected Plaintiff's reputation, namely Plaintiff's reputation with respect to repayment of debts, Plaintiff's solvency, and his reputation of truthfulness and trustworthiness.

52.     Defendant FROST-ARNETT's transmission of Plaintiff's personal information to the Third-Party constitutes a communication in connection with the collection of a consumer debt.

53.    The Defendant FROST-ARNETT also transmitted Plaintiff's personal information to other third-party entities in regard to the collection of the consumer debt. Defendant FROST-ARNETT transmitted this information to other third-party entities when it utilized skip tracing services, and scrubbing services, among other services, to attempt to collect the consumer debt.

54.    Defendant FROST-ARNETT's transmission of Plaintiff's personal information to the Third-Party is a violation of §1692(c)(b) of the FDCPA.

55.    The Defendant FROST-ARNETT COLLECTION LETTERS contains bar codes, discreet tracking numbers, and/or Quick Response ("QR") codes, all of which indicate that the Defendant FROST-ARNETT used a Third-Party to prepare, print, compile, package and send the COLLECTION LETTERS to Plaintiff.

56.    The Third-Party had no legitimate need for Plaintiff's personal transmitted information, and said information constitutes an unlawful transmission of Plaintiff's personal information in violation of §1692(c)(b) of the FDCPA.

57.    The COLLECTION LETTERS were communications from the Defendant FROST-ARNETT, through the Third-Party, to Plaintiff in connection with the collection of a debt on behalf of Defendant SACRED HEART.

58.    The Defendant FROST-ARNETT COLLECTION LETTERS represent actions to attempt to collect a debt by Defendant FROST-ARNETT on behalf of Defendant SACRED HEART.

59.    Plaintiff filed a workers' compensation claim for his work accident of July 18, 2022, against his Employer and the workers' compensation insurance carrier USIS.  At all relevant times, said insurance carrier accepted his workers' compensation claim as compensable. Similarly, USIS also accepted the medical services provided by Defendant SACRED HEART as compensable.

60.     Despite having knowledge that the subject consumer debt arose from a work accident, Defendant SACRED HEART and Defendant FROST-ARNETT nonetheless attempted to collect the debt from the Plaintiff.

### SUMMARY

61.     All the above-described collection communications made to Plaintiff by Defendant FROST-ARNETT, and its collection employees, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e(2), 1692e(10), and 1692f(1), and FCCPA §559.72, amongst others.

62.     During its collection communications, Defendant SACRED HEART and its individual collectors employed by Defendant violated numerous and multiple provisions of FCCPA, including but not limited to, Florida Statute §559.72, amongst others.

### TRIAL BY JURY

63.     Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable. U.S. Const. amend. 7.  Fed.R.Civ.P.38.

### CAUSES OF ACTION

### COUNT 1

### AS TO DEFENDANT FROST-ARNETT'S
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### VIOLATION OF FDCPA-15 U.S.C. § 1692 et seq.

64.     Plaintiff incorporates by reference paragraphs 1 through 63 of this Complaint as though fully stated herein.

65.     The foregoing acts and omissions of the Defendant FROST-ARNETT and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, Sections 1692e(2), 1692e(10), and 1692f(1), of the FDCPA, 15 U.S.C. § 1692 et seq.

66.     As a result of the Defendant FROST-ARNETT's violations of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from the Defendant herein.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant FROST-ARNETT for:

a)   Damages;

b)   Attorney fees and costs;

c)   An injunction prohibiting Defendant FROST-ARNETT from engaging in further collection activities that are in violation of FDCPA; and

d)   Such further relief as this Court deems just and proper.

## COUNT 2

### AS TO DEFENDANT FROST-ARNETT'S VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT INVASION OF PRIVACY VIOLATION OF FDCPA-15 U.S.C. § 1692c(b)

67.     Plaintiff incorporates by reference paragraphs 1 through 63 of this Complaint as though fully stated herein.

68.     Pursuant to 15 U.S.C. § 1692c(b), "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer repoting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

69.     Defendant's transmission of Plaintiff's personal information to the Third-Party violates § 1692c(b) of the FDCPA. This violation of privacy gives rise to a concrete injury in fact under Article III. *See Hunstein v. Preferred Collection & Mgmt. Servs.,* No. 19-14434, 2021 U.S. App. LEXIS 11648, at *23 (11th Cir. Apr. 21, 2021).

70.     Further, Defendant's transmittal of Plaintiff's personal information to the Third-Party constitutes a communication "in connection with the collection of any debt" as defined under § 1692c(b). Consequently, Defendant violated § 1692c(b) of the FDCPA when it transmitted Plaintiff's personal information to the Third-Party. The transmission of Plaintiff's personal information has affected Plaintiff's reputation.

71.     As a result of the Defendant FROST-ARNETT's violations of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from the Defendant herein.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant FROST-ARNETT for:

a)   Damages;

b)   Attorney fees and costs;

c) An injunction prohibiting Defendant FROST-ARNETT from engaging in further collection activities that are in violation of FDCPA; and

d)  Such further relief as this Court deems just and proper.

COUNT 3

AS TO DEFENDANT FROST-ARNETT'S
VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
FALSELY REPRESENTING CHARACTER, AMOUNT, OR LEGAL STATUS OF DEBT
VIOLATION OF FDCPA-15 U.S.C. § 1692e(2)

72.     Plaintiff incorporates by reference paragraphs 1 through 63 of this Complaint as though fully stated herein.

73.     Pursuant to Florida Statute §440.13(2)(a), an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of the recovery may require…"

74.     Further, pursuant to Florida Statute §440.13(13)(a), "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employer or carrier for payment for services rendered in accordance with this chapter."

75.     An employee is shielded from liability arising out of any dispute between the employer/carrier and a health care provider regarding reimbursement for the employee's authorized medical or psychological treatment. *Florida Statute §440.13.*

76.     Pursuant to 15 U.S.C. §1692e(2), a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt including "the false representation of the character, amount, or legal status of any debt; or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

77.     In the instant case, the Defendant FROST-ARNETT sent the COLLECTION LETTERS prepared and/or complied by the Third-Party to Plaintiff in attempts to collect a consumer debt. Said Collection Letter, however, cause the least sophisticated consumer to believe that he or she is otherwise responsible for the payment of the consumer debt. According to Florida Statute §440.13, Plaintiff is not responsible or liable for the payment of the medical services

14

provided by Defendant SACRED HEART, as such services were provided to the Plaintiff as a result of his work-related injuries.

78.     In attempting to collect a debt by mailing the Plaintiff the Defendant FROST-ARNETT COLLECTION LETTERS, Defendant FROST-ARNETT falsely misrepresented Plaintiff's obligation with respect to the consumer debt, especially with respect to character, amount, and legal status. This misrespresentation would wrongfully cause the least sophisticated consumer to falsely believe that he or she is responsible for the payment of such consumer debt. This misrepresentation caused Plaintiff to falsely believe that he was responsible for the payment of said consumer debt.

79.     Upon receipt of Defendant FROST-ARNETT COLLECTION LETTERS, Plaintiff experienced mental anguish in the form of stress and anxiety during a time in which he was experiencing financial strain as a consequence of his work accident. He believed this debt would adversely affect his credit and/or bring about an impending lawsuit, which also caused Plaintiff to experience insomnia.

80.     Consequently, Defendant FROST-ARNETT violated FDCPA, specifically 15 U.S.C. §1692e(2), by mailing, through the Third-Party, the Collection Letter to Plaintiff in attempts to collect a debt.

81.     As a result of the Defendant FROST-ARNETT's violations of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from the Defendant herein.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant FROST-ARNETT for:

a)    Damages;

b)   Attorney fees and costs;

c)   An injunction prohibiting Defendant FROST-ARNETT from engaging in further collection activities that are in violation of FDCPA; and

d)   Such further relief as this Court deems just and proper.

COUNT 4

AS TO DEFENDANT FROST-ARNETT'S
FALSE REPRESENTATION IN ATTEMPT TO COLLECT
VIOLATION OF FDCPA-15 U.S.C. § 1692e(10)

82.     Plaintiff incorporates by reference paragraphs 1 through 63 of this Complaint as though fully stated herein.

83.     Pursuant to 15 U.S.C. § 1692e(10), a debt collector cannot use any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

84.     By sending the Plaintiff the COLLECTION LETTERS requesting payment of a bill that it knew or had reason to know Plaintiff did not owe, Defendant FROST-ARNETT falsely represented Plaintiff's responsibility to pay said medical bill, which it knew Plaintiff did not owe, in violation of 15 U.S.C. 1692e(10).

85.     Upon receipt of COLLECTION LETTERS, Plaintiff experienced mental anguish in the form of stress and anxiety during a time in which he was experiencing financial strain as a consequence of his work accident. He believed this debt would adversely affect his credit and/or bring about an impending lawsuit, which also caused Plaintiff to experience insomnia.

86.     The Defendant FROST-ARNETT sent Plaintiff false representation in attempts to collect a debt in violation of § 1692e(10) of FDCPA.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant FROST-ARNETT for:

a)   Damages;

b)   Attorney fees and costs;

c)   An injunction prohibiting Defendant FROST-ARNETT from engaging in further collection activities that are in violation of FDCPA; and

d)   Such further relief as this Court deems just and proper.


### COUNT 5

AS TO DEFENDANT FROST-ARNETT'S
NOT EXPRESSLY AUTHORIZED OR PERMITTED BY LAW
VIOLATION OF FDCPA-15 U.S.C. § 1692f(1)

87.   Plaintiff incorporates by reference paragraphs 1 through 63 of this Complaint as though fully stated herein.

88.   Pursuant to 15 U.S.C. § 1692f(1), it is a violation of FDCPA for a debt collector to engage in the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation), unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

89.   Since Defendant SACRED HEART provided medical services to Plaintiff for work injuries sustained during the course and scope of employment, it was unlawful for Defendant FROST-ARNETT to attempt to collect the consumer debt under FDCPA. The debt that Defendant FROST-ARNETT attempted to collect from Plaintiff was not expressly authorized by the agreement creating the alleged debt nor was it permitted by law, pursuant to 15 U.S.C. § 1692f(1).

90.   Upon receipt of the COLLECTION LETTERS, Plaintiff experienced mental anguish in the form of stress and anxiety during a time in which he was experiencing financial

strain as a consequence of his work accident. He believed this debt would adversely affect his credit and/or bring about an impending lawsuit, which also caused Plaintiff to experience insomnia.

91.    The Defendant sent Plaintiff letter not expressly authorized or permitted by law, in attempt to collect a debt, in violation of § 1692f(1) of FDCPA.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant FROST-ARNETT for:

a)   Damages;

b)   Attorney fees and costs;

c)   An injunction prohibiting Defendant FROST-ARNETT from engaging in further collection activities that are in violation of FDCPA; and

d)   Such further relief as this Court deems just and proper.

## COUNT 6

### AS TO DEFENDANT FROST-ARNETT'S VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT FLORIDA STATUTE §559.55 et seq. ("FCCPA")

92.    Plaintiff incorporates by reference all of the above paragraphs 1 through 63 of this Complaint as though fully stated herein.

93.    The foregoing acts and omissions of the Defendant FROST-ARNETT and its agents constitute violation of the FCCPA including Florida Statute § 559.72.

94.    As a result of the Defendant's violations of the FCCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to Florida Statute § 559.77(2), and

reasonable attorney's fees and costs pursuant to § 559.77(2), in each instance from each Defendant herein.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant FROST-ARNETT for:

a)   Damages;

b)   Attorney fees and costs;

c)   An injunction prohibiting Defendant FROST-ARNETT from engaging in further collection activities that are in violation of FCCPA; and

d)   Such further relief as this Court deems just and proper.

COUNT 7

AS TO DEFENDANT FROST-ARNETT'S
VIOLATIONS OF §559.72(9) OF THE FLORIDA
CONSUMER COLLECTION PRACTICES ACT

95.    Plaintiff incorporates by reference all of the above paragraphs 1 through 63 of this Complaint as though fully stated herein.

96.    Pursuant to § 559.72(9) of the FCCPA, while collecting debts, no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

97.    Pursuant to Florida Statute §440.13(2)(a), an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of the recovery may require…"

98.    Futher, pursuant to Florida Statute §440.13(13)(a), "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided

by this chapter. Such providers have recourse against the employer or carrier for payment for servcies rendered in accordance with this chapter."

99.     An employee is shielded from liability arising out of any dispute between the employer/carrier and a health care provider regarding reimbursement for the employee's authorized medical or psychological treatment. *Florida Statute §440.13.*

100.     In the instant case, the Defendant FROST-ARNETT knew that the consumer debt resulted from a work accident and resulting injuries sustained by the Plaintiff during the course and scope of his employment. The Defendant FROST-ARNETT knew that it could not collect or receive payment from an injured employee within the State of Florida except explicitly permitted by Florida Statute. Moreover, Defendant FROST-ARNETT knew that the employee/Plaintiff is shielded from liability in any dispute between the employer/carrier and health care provider regarding reimbursement for employee/Plaintiff's authorized medical treatment.

101.     Even though Defendant FROST-ARNETT was well aware that it had no entitlement or authority to collect the consumer debt from the Plaintiff directly, Defendant FROST-ARNETT nonetheless mailed the FROST-ARNETT COLLECTION LETTERS to Plaintiff in attempts to collect the consumer debt. In light of the foregoing, the Defendant FROST-ARNETT violated Florida Statute § 559.72(9) of the FCCPA by mailing said Collection Letter to the Plaintiff.

102.     Upon receipt of the Collection Letter, Plaintiff experienced mental anguish in the form of stress and anxiety during a time in which he was experiencing financial strain as a consequence of his work accident. He believed this debt would adversely affect his credit and/or bring about an impending lawsuit, which also caused Plaintiff to experience insomnia.

103.     The Defendant FROST-ARNETT attempted to enforce the debt knowing that the debt was not legitimate, in violation of § 559.72(9) of FCCPA.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant FROST-ARNETT:

a)  Damages;

b)  Attorney fees and costs;

c)  An injunction prohibiting Defendant FROST-ARNETT from engaging in further collection activities that are in violation of FCCPA;

d) Such further relief as this Court deems just and proper.

COUNT 8

AS TO DEFENDANT SACRED HEART'S
VIOLATIONS OF §559.72(5) OF THE FLORIDA
CONSUMER COLLECTION PRACTICES ACT

104.    Plaintiff incorporates by reference all of the above paragraphs 1 through 63 of this Complaint as though fully stated herein.

105.    Pursuant to § 559.72(5) of the FCCPA, in collecting consumer debts, no person shall: "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Fla Stat. § 559.72(5) (emphasis added).

106.    Pursuant to Florida Statute §440.13(2)(a), an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of the recovery may require…"

107.    Futher, pursuant to Florida Statute §440.13(13)(a), "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided

by this chapter. Such providers have recourse against the employer or carrier for payment for servcies rendered in accordance with this chapter."

108.    An employee is shielded from liability arising out of any dispute between the employer/carrier and a health care provider regarding reimbursement for the employee's authorized medical or psychological treatment. *Florida Statute §440.13.*

109.    In the instant case, the Defendant SACRED HEART knew that the consumer debt resulted from a work accident and resulting injuries sustained by the Plaintiff during the course and scope of his employment. The Defendant SACRED HEART knew that it could not collect or receive payment from an injured employee within the State of Florida except explicitly permitted by Florida Statute. Moreover, Defendant SACRED HEART knew that the employee/Plaintiff is shielded from liability in any dispute between the employer/carrier and health care provider regarding reimbursement for employee/Plaintiff's authorized medical treatment.

110.    Even though Defendant SACRED HEART was well aware that it had no entitlement or authority to collect the consumer debt from the Plaintiff, Defendant SACRED HEART nonetheless referred the collection of the Consumer Debt to Defendant FROST-ARNETT. Consequently, Defendant SACRED HEART disclosed to Defendant FROST-ARNETT false information about the Plaintiff as well as information that Defendant FROST-ARNETT had not legitimate business need for. Specifically, Defendant SACRED HEART disclosed to Defendant FROST-ARNETT the existence of a Consumer Debt, that said debt was owed to Defendant SACRED HEART and that the Plaintiff had not paid the Consumer Debt or had defaulted on said debt.

111.    Accordingly, Defendant SACRED HEART violated § 559.72(5) of the FCCPA by referring the collection of the Consumer Debt to Defendant FROST-ARNETT for collection.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant SACRED HEART:

a)   Damages;

b)   Attorney fees and costs;

c)   An injunction prohibiting Defendant SACRED HEART from engaging in further collection activities that are in violation of FCCPA;

d) Such further relief as this Court deems just and proper.

## COUNT 9

### AS TO DEFENDANT SACRED HEART'S VIOLATION OF §559.72(9) OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

112.    Plaintiff incorporates by reference all of the above paragraphs 1 through 63 of this Complaint as though fully stated herein.

113.    Pursuant to § 559.72(9) of the FCCPA, while collecting debts, no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

114.    Pursuant to Florida Statute §440.13(2)(a), an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of the recovery may require…"

115.    Futher, pursuant to Florida Statute 440.13(13)(a), "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employer or carrier for payment for servcies rendered in accordance with this chapter."

116.    An employee is shielded from liability arising out of any dispute between the employer/carrier and a health care provider regarding reimbursement for the employee's authorized medical or psychological treatment. *Florida Statute 440.13.*

117.    In the instant case, the Defendant SACRED HEART knew that the consumer debt resulted from a work accident and resulting injuries sustained by the Plaintiff during the course and scope of his employment. The Defendant SACRED HEART knew it could not collect or receive payment from an injured employee within the State of Florida except explicitly permitted by Florida Statute. Moreover, Defendant SACRED HEART knew that the employee/Plaintiff is shielded from liability in any dispute between the employer/carrier and health care provider regarding reimbursement for employee/Plaintiff's authorized medical treatment.

118.    Even though Defendant SACRED HEART was well aware that it had no entitlement or authority to collect the consumer debt from the Plaintiff directly, Defendant SACRED HEART nonetheless mailed the SACRED HEART CREDITOR LETTERS to Plaintiff in an attempt to collect the consumer debt. The SACRED HEART CREDITOR LETTERS stated that the amount listed was Plaintiff's responsibility. In light of the foregoing, the Defendant SACRED HEART violated Florida Statute § 559.72(9) of the FCCPA by mailing said CREDITOR LETTERS to the Plaintiff.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant SACRED HEART for:

a)   Damages;

b)   Attorney fees and costs;

c)   An injunction prohibiting Defendant SACRED HEART from engaging in further collection activities that are in violation of FCCPA; and

d)   Such further relief as this Court deems just and proper.

<u>RELIEF</u>

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant FROST-ARNETT and Defendant SACRED HEART:

a)      Damages under FDCPA and FCCPA;

b)      Reasonable attorney's fees and costs under FDCPA and FCCPA;

c)      An injunction prohibiting Defendant FROST-ARNETT and Defendant SACRED HEART from engaging in further collection activities that are in violation of FCCPA and FDCPA; and

d)      Such further relief as this Court deems just and proper.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that judgment be entered against the Defendant FROST-ARNETT and Defendant SACRED HEART.

Dated:  December 6, 2023

Respectfully submitted,

*/s/ Monica Amor*
AMOR LAW FIRM, P.A.
Monica Amor, Esq.
E-mail: mamor@amorlaw.com
Florida Bar No: 0118664
3625 NW 82nd Avenue, Suite 203
Doral, Florida 33166
Telephone: (305) 882-2667
Facsimile:  (888) 311-2667
Attorney for Plaintiff